1  Christopher Kim, Esq. (Bar No. 082080)
   Lisa J. Yang, Esq. (Bar No. 208971)
2  **LIM RUGER & KIM, LLP**
   1055 West Seventh Street, Suite 2800
3  Los Angeles, California 90017
   Telephone: (213) 955-9500
4

5  Richard S. Schiffrin, Esq.       *APPL FOR PRO*
   Joseph H. Meltzer, Esq.          *STMT TO ATTY*
6  Edward W. Ciolko, Esq.           *FOR 4/10/03*
   **SCHIFFRIN & BARROWAY, LLP**
7  Three Bala Plaza East, Suite 400
   Bala Cynwyd, Pennsylvania 19004
8  Telephone: (610) 667-7706

9  Attorneys for Plaintiff, Carol Pilkington,
   on behalf of herself and all others similarly situated,
10

11

12              **UNITED STATES DISTRICT COURT**

13            **CENTRAL DISTRICT OF CALIFORNIA**

14                  **WESTERN DIVISION**

15  CAROL PILKINGTON, on behalf of      )  Case No.: **03 - 2446**
    herself and all others similarly situated,  )
16                                      )
17                  Plaintiffs,         )  CLASS ACTION COMPLAINT
                                        )  FOR VIOLATIONS OF THE
18         vs.                          )  EMPLOYEE RETIREMENT
                                        )  INCOME SECURITY ACT
19  CARDINAL HEALTH, INC., SYNCOR       )
    INTERNATIONAL CORPORATION,          )
20  MONTY FU, ROBERT G. FUNARI,         )
    ROBERT D. WALTER, PAUL S.           )
21  WILLIAM, EDWIN A. BURGOS,           )
    UNKNOWN FIDUCIARY                   )
22  DEFENDANTS 1-100,                   )
                                        )
23                  Defendants,         )
    _____ )

24

25         Plaintiff Pilkington, a participant in the Syncor International Corporation

26  Employees' Savings and Stock Ownership Plan (the "Plan"), on behalf of herself

27  and a class of all others similarly situated, alleges as follows:

28  / / /



```
04/08/2003 10:14:32 AM  Receipt #: 36538

      Cashier : ENAKADA [LA 1-1]
Paid by: LIM, RUGER
2:CV03-02446
2003-086900     5 - Filing Fee Civil(1)
Amount :                        $60.00
2:CV03-02446
2003-510000    11 - Special Fund F/F(1)
Amount :                        $90.00
Check Payment : 13889 /         150.00
Total Payment :                 150.00
```

## INTRODUCTION

1.     This is a class action brought pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, on behalf of the participants in and beneficiaries of the Plan, a 401(k) plan established and sponsored by Syncor Corporation/Cardinal Health ("Syncor," "Syncor/Cardinal Health" or the "Company") as a benefit for its employees.

2.     401(k) plans confer tax benefits on participating employees to incentivize saving for their retirement and/or other long-term goals. An employee participating in a 401(k) plan may have the option of purchasing the common stock of his employer, often the sponsor of the plan, as part of his/her retirement investment portfolio. Investment in Syncor/Cardinal Health common stock is one of the investment alternatives in the Plan.

3.     Plaintiff Pilkington was an employee of Syncor/Cardinal Health a participant in the Plan. Plaintiff's retirement investment portfolio includes Syncor/Cardinal Health stock. Plaintiff alleges that defendants, as fiduciaries of the Plan, breached their duties to her and to the other participants and beneficiaries of the Plan in violation of ERISA § 409, 29 U.S.C. § 1109, particularly with regard to the Plan's holdings of Syncor/Cardinal Health stock.

4.     Defendants are liable under ERISA to restore losses sustained by the Plan participants as a result of defendants' breaches of their fiduciary obligations.

5.     Because her claims apply to the Plan's participants and beneficiaries as a whole, and because ERISA authorizes a participant such as plaintiff to sue for plan-wide relief for breaches of fiduciary duty, plaintiff brings this action on behalf of herself and all the participants and beneficiaries of the Plan who sustained losses during the relevant period.

/ / /

/ / /

/ / /

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

7.     Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some defendants reside or maintain their primary place of business in this district.

## THE PLAN

8.     The Syncor International Corporation Employees' Savings and Stock Ownership Plan is an "employee pension benefit plan," as defined by § 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A).  Further, the Plan is an "eligible individual account plan" within the meaning of section § 407(d)(3) of ERISA, 29 U.S.C. § 1107(d)(3), and is a "qualified cash or deferred arrangement" within the meaning of I.R.C. § 401(k), 26 U.S.C. § 401(k).  The relief requested in this action is for the benefit of the Plan and its participants/beneficiaries.

9.     The Plan is sponsored by Syncor/Cardinal Health.

10.     Non-bargaining unit employees of Syncor/Cardinal Health become eligible for Plan participation upon attaining 18 years of age and completing three months of employment with the Company.  Prior to August 1, 2001, an employee had to have reached 21 years of age and one full year of employment with Syncor before becoming eligible for the Plan.

11.     Participants in the Plan are permitted to contribute between 1% and 14% of their compensation to the Plan each pay period.  Plan Participants may contribute another 1% to 2% of their compensation if they direct this added contribution into the Syncor/Cardinal Health Stock Investment Participant Account ("Individual Stock Account".)  The Company Stock Account invested/invests in Syncor/Cardinal Health common stock, purchased, through

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

1    trustees, both on the open market and directly from the Company.   Participants are
2    immediately vested in their own Plan contributions.

3        12.    Syncor/Cardinal Health contributes to the Plan each year (on a
4    quarterly basis) enough funds to match the interest and principal paid on loans the
5    Plan uses to buy Syncor/Cardinal Health  stock.  As each quarterly loan payment is
6    made, Company stock is released into individual "Company Stock Accounts" and
7    takes the form of Company/employer matching contributions to the Plan.
8    Additionally, Syncor/Cardinal Health may choose to match 50% of any
9    participant's contributions made in any other investment alternative of the Plan
10    (*e.g.* one of a number of mutual funds–there are 25 investment options available in
11    the Plan according to the Company's 11-K submission to the Securities and
12    Exchange Commission ("SEC"), up to the 4% of an participant's compensation.
13    This latter match is unavailable to employees hired after August 1, 2001 until
14    he/she is with the Company for one year.  Lastly, Syncor/Cardinal Health has the
15    option to match, share for share, each individual participant's investment in
16    Syncor/Cardinal Health stock. Plan participants do not become fully vested in
17    Company matching contributions of any kind until accumulating five years of
18    employment service.

19        13.    Upon information and belief, all investment options under the Plan
20    were presented to Participants as appropriate for their consideration as retirement
21    savings investment alternatives, including investment in Company stock.

22        14.    According to the Company's 11-K SEC submission for fiscal year
23    2001:

24            Prior to January 1, 2002, a participant who has attained the age of 55
25            and has been a participant [in the Plan] at least ten years may
26            diversify a portion of his/her "Company Stock Account."  Such
27            participant may diversify during the next five years 25% of the total
28            number of shares of Company Stock allocated to the account and in

the sixth year may diversify 50% of the total number of shares. There is no provision for diversification of [any Individual Stock Account.] Subsequent to January 1, 2002, a participant under the age of 55 who who has been a participant at least 10 years may diversify a portion of his/her Company Stock Account and Individual Stock Account. Such participant may diversify 10% of the number of shares of Company Stock allocated to [both accounts combined].

A participant 55 or older may diversify 25%, and in the fifth plan year after attaining age 55 may diversify 50% of the [number of shares of Company common stock allocated to either of his/her Syncor/Cardinal Health Stock Accounts.]

15.    Syncor stock accounted for approximately **71%** of the Plan's assets available for benefit payments to participants as of December 31, 2001.

16.    The Plan is administered, according to the Syncor/Cardinal Health's 11-K submission for fiscal 2001, by the Company's Employees' Savings and Stock Ownership Plan Administrative Committee.

17.    Soon after the acquisition of Syncor by Cardinal Health was consummated on January 1, 2003, Syncor/Cardinal Health, in a S-8 submission to the SEC, stated that the combined company created by the transaction would continue to maintain the Syncor International Corporation Employees' Savings and Stock Ownership Plan as it was described in Syncor's 11-K submission for fiscal 2001, substituting Cardinal Health shares as the Plan's Company stock investment alternative and Company matching contribution.

18.    Upon information and belief, defendants include named and de facto fiduciaries with respect to the Plan. All defendants exercised discretionary authority or control regarding management of the Plan; management of the Plan's assets; and/or administration of the Plan.

/ / /

# PARTIES

## Plaintiff

19.    Plaintiff Pilkington worked for Syncor/Cardinal Health, and is a participant in the Plan pursuant to § 3(7) of ERISA, 29 U.S.C. § 1102(7), and continues to hold Syncor/Cardinal Health shares in his/her retirement investment portfolio.

## Defendants

20.    Defendant Cardinal Health, Inc. incorporated in the state of Ohio, maintains its principal executive offices at 7000 Cardinal Place, Dublin, Ohio 43017.  On January 1, 2003, Cardinal Health completed its corporate acquisition of Syncor Cardinal Health, according to corporate press statements, is a holding company for businesses that provide/produce support products and services to the healthcare industry.  Cardinal Health companies develop, manufacture, package and market products for patient care; develop drug-delivery technologies; distribute pharmaceuticals, medical-surgical and laboratory supplies; and offer consulting and other services.

21.    Upon information and belief, Cardinal Health has been a fiduciary of the Plan within the meaning of ERISA since January 1, 2003 in that it exercises discretionary authority with respect to management and administration, and/or oversight of the management and administration, of the Plan and/or management and disposition of the Plan's assets.  Cardinal Health at all relevant times has acted through its officers and employees, including the Chief Executive Officer ("CEO"), who were appointed by the Company to perform Plan-related fiduciary functions, and did so in the course and scope of their employment.  Cardinal Health had, since January 1, 2003, effective control over the activities of its officers and employees, including their Plan-related activities.  Through its Board of Directors, or otherwise, Cardinal Health has had the authority and discretion to hire and terminate said officers and employees.  Cardinal Health, since January 1,

2003 has had the authority and discretion to appoint, monitor, and remove officers and employees from their individual fiduciary roles with respect to the Plan. Additionally, by failing to properly discharge their fiduciary duties under ERISA, the officer and employee fiduciaries breached duties they owed to Plan participants and their beneficiaries. Accordingly, the actions of the Plan's Cardinal Health employee fiduciaries are imputed to Cardinal Health under the doctrine of *respondeat superior*, and Cardinal Health is liable for these actions.

22. Defendant Syncor International Corporation was, before its acquisition during the Class Period by Cardinal Health was finalized on January 1, 2003, a Delaware corporation. The Company maintains its principal executive offices at 6464 Canoga Avenue, Woodland Hills, California 91367. Currently operating as Cardinal Health's Nuclear Pharmacy Services division, Syncor describes itself in press releases as a leading provider of high technology health care services concentrating on nuclear pharmacy services, medical imaging, niche manufacturing and radiotherapy.

23. Upon information and belief, the business entity that was the Syncor International Corporation is a fiduciary of the Plan within the meaning of ERISA in that it exercises discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets. Syncor at all times acted through its officers and employees who were appointed by the Company to perform Plan-related fiduciary functions, and did so in the course and scope of their employment. Syncor had, at all applicable times, effective control over the activities of its officers and employees, including their Plan-related activities. Through its one-time Board of Directors, or otherwise, Syncor had the authority and discretion to hire and terminate said officers and employees. Syncor also had the authority and discretion to appoint, monitor, and remove officers and employees from their individual fiduciary roles with respect to the Plan. Additionally, by failing to properly discharge their fiduciary duties

1  under ERISA, the officer and employee fiduciaries breached duties they owed to
2  Plan participants and their beneficiaries.  Accordingly, the actions of the Plan's
3  oversight committee members and other employee fiduciaries are imputed to
4  Syncor under the doctrine of *respondeat superior*, and Syncor is liable for these
5  actions.

6      24.    Defendant Monty Fu ("Fu") co-founded Syncor's corporate
7  predecessor in 1974 and was Syncor's Chairman and a Company Director for most
8  of the pre-Cardinal Health transaction portion of the Class Period.  Upon
9  information and belief, Fu was a fiduciary of the Plan within the meaning of
10  ERISA in that he exercised authority with respect to management and
11  administration of the Plan and/or management and disposition of the Plan's assets.

12      25.    Defendant Robert G. Funari ("Funari") was Syncor's Chief Executive
13  Officer and President during the Class Period. Upon information and belief, Funari
14  was a fiduciary of the Plan within the meaning of ERISA in that he exercised
15  discretionary authority with respect to management and administration of the Plan
16  and/or management and disposition of the Plan's assets.

17      26.    Defendant Robert D. Walter ("Walter") is Cardinal Health's
18  Chairman and CEO. Upon information and belief, Walter is a fiduciary of the Plan
19  within the meaning of ERISA in that he exercises discretionary authority with
20  respect to management and administration of the Plan and/or management and
21  disposition of the Plan's assets.

22      27.    Defendant Paul S. Williams ("Williams") is Cardinal Health's
23  Executive Vice President, Chief Legal Officer, and Secretary.  He was named as
24  Cardinal Health's agent for service on its S-8 SEC submission dated January 6,
25  2003.  This SEC filing registered Cardinal Health shares to be used as Company
26  matching/contributory stock in the Syncor International Corporation Employees'
27  Savings and Stock Ownership Plan, formally adopting the Plan as Cardinal Health
28  policy for its newly acquired Syncor employees. Upon information and belief,

1  Williams is a fiduciary of the Plan within the meaning of ERISA in that he

2  exercises discretionary authority with respect to management and administration

3  of the Plan and/or management and disposition of the Plan's assets.

4       28.    Defendant Edwin A. Burgos, Secretary of the Syncor International

5  Corporation Employees' Savings and Stock Ownership Plan Administrative

6  Committee, signed the Company's 11-K submission for Syncor's fiscal year

7  ending December 31, 2001. Upon information and belief, Burgos is a fiduciary of

8  the Plan within the meaning of ERISA in that he exercises discretionary authority

9  with respect to management and administration of the Plan and/or management

10 and disposition of the Plan's assets

11      29.    Unknown Fiduciary Defendants 1-100 are residents of the United

12 States and are or were fiduciaries of the Plan during the Class Period.  These

13 defendants include employees of the Company tasked with overseeing the

14 administration of the Plan.  Their identities are currently unknown to plaintiff;

15 once their identities are ascertained, plaintiff will seek leave to join them under

16 their true names.

17

18                    **CLASS ACTION ALLEGATIONS**

19      30.    Plaintiff brings this action as a class action pursuant to Rules 23(a),

20 (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of

21 herself and the following class of persons similarly situated (the "Class"):

22              All persons who were participants in or beneficiaries of the Plan at

23              any time between April 25, 2001 and the present (the "Class Period"),

24              and whose accounts included investments in Syncor stock.

25 Excluded from the Class are the defendants, any entity in which the defendants

26 have a controlling interest, or is a parent or subsidiary of or is controlled by the

27 Company, and the officers, directors, employees, affiliates, legal representatives,

28 heirs, predecessors, successors and assigns of the defendants.

31.   The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time, and can only be ascertained through appropriate discovery, plaintiff believes there are, at a minimum, thousands of members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.

32.   Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)   whether defendants each owed a fiduciary duty to plaintiff and members of the Class;

(b)   whether defendants breached their fiduciary duties to plaintiff and members of the Class by failing to act prudently and solely in the interests of the Plan's participants and beneficiaries;

(c)   whether defendants violated ERISA; and

(d)   whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

33.   Plaintiff's claims are typical of the claims of the members of the Class because plaintiff and the other members of the Class each sustained damages arising out of the defendants' wrongful conduct in violation of federal law as complained of herein.

34.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35.   Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other

1    members not parties to the actions, or substantially impair or impede their ability
2    to protect their interests.

3        36.    Class action status is also warranted under the other subsections of
4    Rule 23(b) because: (i) prosecution of separate actions by the members of the
5    Class would create a risk of establishing incompatible standards of conduct for
6    defendants; (ii) defendants have acted or refused to act on grounds generally
7    applicable to the Class, thereby making appropriate final injunctive, declaratory,
8    or other appropriate equitable relief with respect to the Class as a whole; and (iii)
9    questions of law or fact common to members of the Class predominate over any
10   questions affecting only individual members and a class action is superior to the
11   other available methods for the fair and efficient adjudication of this controversy.

12       37.    There are one or more putative securities class actions pending
13   against Syncor/Cardinal Health and other defendants.  The claims herein arise
14   under ERISA and related principles, and are not being asserted by the plaintiffs in
15   the securities class actions.  The named plaintiffs in those class actions do not
16   adequately represent the plaintiff or the Class herein with respect to ERISA claims
17   and may be subject to defenses and limitations of liability under the Private
18   Securities Litigation Reform Act, 15 U.S.C. § 74 u-4 *et seq.*, and other statutes or
19   Rules that do not apply to the claims asserted herein.

20       38.    As required by ERISA, defendants carry insurance for claims asserted
21   herein that may not be available to the defendants in the securities class actions.

22       39.    There are people in this Class who are not members of the classes or
23   putative classes in the securities class action cases.

24

25   ## DEFENDANTS' FIDUCIARY STATUS

26       40.    During the Class Period, upon information and belief, defendants had
27   discretionary authority with respect to the management of the Plan and/or the
28   management or disposition of the Plan's assets, and had discretionary authority or

1   responsibility for the administration of the Plan.

2       41.    During the Class Period, all of the defendants acted as fiduciaries of

3   the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and the law

4   interpreting that section.

5       42.    ERISA requires every plan to provide for one or more named

6   fiduciaries who will have "authority to control and manage the operation and

7   administration of the plan." § 402(a)(1), 29 U.S.C. § 1102(a)(1).

8       43.    Upon information and belief, instead of delegating all fiduciary

9   responsibility for the Plan to external service providers, Syncor/Cardinal Health

10   chose to comply with the requirement of § 402(a)(1) by internalizing this

11   fiduciary function.

12       44.    The Plan is administered by Syncor/Cardinal Health through a

13   specially selected group of Company employees.  Upon information and belief,

14   this group consisted of, at least in part, employees of the Company appointed by

15   the Company's Board of Directors, and was responsible for, *inter alia*,

16   establishing investment objectives and policies for the entire Plan – including

17   investment in the Company Stock .  The actions of employee-fiduciaries were on

18   behalf of and are attributable to the Company.

19       45.    ERISA treats as fiduciaries not only persons explicitly named as

20   fiduciaries under § 402(a)(1), but also any other persons who act in fact as

21   fiduciaries, *i.e.*, performed fiduciary functions.  Section 3(21)(A)(I) of ERISA, 29

22   U.S.C. §1002(21)(A)(I), provides that a person is a fiduciary "to the extent . . . he

23   exercises any discretionary authority or discretionary control respecting

24   management of such plan or exercises any authority or control respecting

25   management of disposition of its assets . . . ."  During the Class Period, defendants

26   performed fiduciary functions under this standard, and thereby also acted as

27   fiduciaries under ERISA.

28       46.    In addition, under ERISA, in various circumstances, non-fiduciaries

1  who knowingly participate in fiduciary breaches may themselves be liable.  To the

2  extent any of the defendants are held not to be fiduciaries, they remain liable as

3  non-fiduciaries who knowingly participated in the breaches of fiduciary duty

4  described below.

5      47.    During the Class Period, Syncor/Cardinal Health's direct and indirect

6  communications with Plan participants included material misrepresentations and

7  omissions which caused plaintiff and members of the Class to purchase, and to

8  hold and maintain, investments in Company stock , and to accept at face value

9  investments in Company stock .  These communications included, but were not

10  limited to SEC filings, Summary Plan Descriptions, annual reports, and press

11  releases.  Syncor/Cardinal Health also acted as a fiduciary to the extent of this

12  activity.

13

14                    **SUBSTANTIVE ALLEGATIONS**

15  **BACKGROUND**

16      48.    Syncor/Cardinal Health Nuclear Pharmacy Services is a provider of

17  specialty healthcare services, with a particular focus on radiopharmacy services.

18  Syncor's radiopharmacies compound, dispense, and distribute patient-specific

19  radioactive pharmaceutical compounds used in nuclear diagnostic imaging

20  procedures.

21      49.    Syncor operates more than 130 radiopharmacies in the United States

22  and approximately 15 radiopharmacies in 10 foreign countries, including Taiwan

23  and China.  In 2001, Syncor's international operations accounted for a significant

24  and growing percentage of its overall revenues.  On its website, the Company

25  touted, to Plan participants and the investing public at large, that "Syncor

26  [intended to achieve great growth in sales] by growing it international and medical

27  imaging business."  The website's "Our History" section stated that Wall Street

28  agreed with the Company's ambitious growth forecasts, and noted that analysts

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

1  "have initiated coverage of Syncor with a buy rating."

2  **SYNCOR'S MERGER WITH CARDINAL HEALTH**

3      50.    On June 14, 2002, Syncor and Cardinal Health announced the

4  former had agreed to be acquired by the latter in a stock-for-stock merger valued

5  at approximately $1.1 billion.  Terms of the definitive merger agreement, which

6  were modified late in the negotiations due to some of Syncor's actions alleged

7  herein, called for Syncor shareholders to receive 0.47 shares of Cardinal Health

8  common stock for each outstanding share of Syncor common stock.

9      51.    In a press release announcing the merger, Syncor President and

10  Chief Executive Officer Robert Funari stated, "Syncor's commitment to service

11  and professionalism, bias towards action, and business innovation are the reasons

12  why we are so successful in the radiopharmacy business.  These are characteristics

13  we share with Cardinal Health so we are excited to build on our considerable

14  success through this new association."

15      52.    In connection with the merger agreement, Syncor made customary

16  representations and warranties to Cardinal Health, including, among other things,

17  that Syncor was in compliance with all applicable laws.

18  **SYNCOR'S VIOLATIONS OF THE FOREIGN CORRUPT PRACTICES ACT ARE**

19  **EXPOSED**

20      53.    The Foreign Corrupt Practices Act ("FCPA"), 15 USCS § 78dd-2

21  (2002) prohibits U.S. companies and their officers, directors, employees, and

22  agents from making payments or gifts to foreign officials to influence their

23  decisions.

24      54.    On November 6, 2002, before the market opened, Cardinal Health

25  announced that during its due diligence related to the merger, it had uncovered

26  evidence that Syncor had violated the FCPA by making illegal payments to

27  government officials and private business interests in Taiwan and China.  At the

28  same time, Syncor announced that:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

    (a)    A special sub-committee of its board of directors, the "Syncor Special Committee," had also been investigating payments made by Syncor Taiwan, Inc. and other Company subsidiaries;

    (b)    The committee's investigation indicated that some payments made to state-owned and private healthcare facilities may have violated foreign and U.S. law, including the FCPA;

    (c)    Representatives of Syncor had met with the Securities and Exchange Commission ("SEC") and the U.S. Department of Justice ("DOJ") to discuss the payments; and

    (d)    Syncor Chairman Monty Fu and his brother Moses Fu, director of Syncor's Asia Region, had gone on paid leave pending completion of an investigation into their involvement in the payments.

55.    Upon disclosure of the foregoing information, the price of Syncor common stock plunged 36%, from $35.92 to $23, in pre-open trading.  The Nasdaq Stock Market then halted trading in Syncor stock for most of the day. Trading resumed at approximately 3:15 p.m., and Syncor shares closed at $27.40, a single-day drop of 23.7%.  The price of Syncor common stock continued to plummet in subsequent days, hitting a 52-week low of $17.35 on November 8, 2002, representing a devaluation of more than 50% in just two trading days.  The plummeting share values meant large and painful losses to participants of a retirement Plan so heavily weighted in Syncor stock.

56.    On November 19, 2002, Syncor announced that:

    (a)    The Syncor Special Committee has found that questionable payments have been made over a substantial period of time to customers in Taiwan, including state-owned and private healthcare facilities, and certain of their individual employees. Based on information gathered as of that date, some or all of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

the payments appear to have violated U.S. law, including

various provisions of the [FCPA]. In addition, some or all of

the payments appear to have violated local Taiwanese law;

(b) The Syncor Special Committee has also found questionable

payments and other transactions at Syncor operations in at least

six other countries in Asia, Latin America and Europe that also

may have violated U.S. law, including the payment, record-

keeping and controls provisions of the FCPA. In addition, some

or all of these payments appear to have violated local laws in

the relevant jurisdictions; and

(c) During the course of its investigation of Syncor's foreign

operations, the Syncor Special Committee identified a number

of additional instances where activities of Syncor or one of its

subsidiaries or representatives may have constituted violations

of local laws and regulations relating to, among other things,

tax, competition and regulatory matters.

## FURTHER FALLOUT

57. On December 4, 2002, Syncor and Cardinal Health announced, as alluded to above that as a result of Syncor's alleged FCPA violations, the two companies had amended their June 14, 2002 merger agreement by, among other things, reducing the exchange ratio of 0.52 Cardinal Health shares for each Syncor share to 0.47. Thus, the consideration to be paid to Syncor shareholders was reduced by at least $63 million, another hit to the value of Syncor shares held by Plan participants.

58. Also on December 4, 2002, Syncor announced that:

(a) The Company had reached an agreement with the DOJ to plead

guilty to one count of violating the FCPA and pay a fine of $2

million;

(b)  The Company had become subject to a SEC consent decree and court-approved cease and desist order prohibiting further violations of the FCPA and agreed to pay a civil penalty of $500,000;

(c)  Additionally, the SEC and Syncor agreed that the Company's Board of Directors would be required to appoint an independent consultant to review and make recommendations to improve Syncor's internal controls, record-keeping and financial reporting policies and procedures, especially as they relate to the anti-bribery proscriptions of the FCPA; and

(d)  Chairman and Company co-founder Monty Fu agreed to abdicate any executive position with the Company, resign as a Company director, waive any right to a severance package, and surrender $2.5 million in personally-held Syncor common stock.

## EPILOGUE

59.  In breach of their fiduciary duties, defendants failed to disclose to Plan participants that Syncor had committed numerous violations of the FCPA which:

(a)  Subjected Syncor to substantial liability, fines, and costs associated with various governmental investigations of its illegal conduct;

(b)  Called into question the veracity of the Company's financial reporting of its foreign operations and its characterization of these overseas affiliates/subsidiaries as engines of future revenue growth; and

///

///

(c)     Substantially impaired Syncor's ability to consummate its
merger with Cardinal Health on optimal, price-maximizing
terms.

## CLAIMS FOR RELIEF

60.     At all relevant times, defendants were and acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  ERISA imposes strict fiduciary duties upon plan fiduciaries.  ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

(1)[A]     fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(A)     for the exclusive purpose of

(i)     providing benefits to participants and their beneficiaries; and

(ii)     defraying reasonable expenses of administering the plan;

(B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;

(C)     by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

61.    ERISA also imposes strict co-fiduciary duties on plan fiduciaries. ERISA § 405; 29 U.S.C. § 1105, states, in relevant part, that:

> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (a)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or
>
> (b)    if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (c)    if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

## COUNT I

### (Failure to Disseminate Necessary Information)

62.    Plaintiff incorporates the allegations contained in the previous paragraphs of thus Complaint as if fully set forth herein.

63.    ERISA fiduciaries have a duty to speak truthfully, to not mislead participants, and to disclose truthful information on their own initiative when participants need such information to exercise their rights under the plan.  In a plan with various funds available for investment, this duty to inform and disclose includes: (1) the duty to provide to plan participants material information of which the fiduciary has or should have knowledge that is sufficient to advise the average plan participant of the risks associated with investing in any particular fund; and

(2) the duty to refrain from making material misrepresentations.

64.     A fiduciary must not only disclose complete and correct material information, but must provide information (even where not requested) if failing to convey the information would be harmful to participants.  In essence, a fiduciary must act to protect participants from losses when he knows or should know of facts that cast doubt on the soundness of certain plan investment alternatives.

65.     Defendants breached their fiduciary duties by failing to provide Plan participants and beneficiaries with complete and accurate information regarding investment in Syncor stock, including, but not limited to: failing to disclose an apparent corporate policy of illegal payments to foreign customers and government officials; and misrepresenting the true nature and accounting profitability of the Company in general and its foreign operations in particular. Syncor provided false and/or misleading earnings and revenue estimates/forecasts despite having knowledge of these fraudulent and misleading activities; and, continually, through press releases, SEC filings, and elsewhere, characterized Syncor as healthy, growing business concern with the imminent expansion of its international operations being lauded as an driving engine of the Company's present and future revenue streams. Both of these Company practices artificially inflated the value of Syncor stock and misled participants and beneficiaries regarding the soundness and prudence of investing their retirement benefits in Syncor stock during the pre-merger portion of the Class Period.  This information was especially critical because investment in Syncor stock was, by definition, an undiversified investment in a single company's common stock and, as such, carried with it an inherently high degree of risk.

66.     Under ERISA, fiduciaries are responsible for the prudence of plan investments unless plan participants and beneficiaries themselves exercised effective and informed control over their individual accounts.  ERISA § 404(c), 29 U.S.C. § 1104(c).

67.     Plan participants and beneficiaries did not exercise such control in this case as defendants failed to provide them with complete and accurate information regarding Syncor's true business health and forward-looking profitability, and misled them regarding the appropriateness of Syncor stock as a Plan investment. Therefore, defendants remained responsible for ensuring that Plan assets were invested prudently, and are liable for losses that were incurred as a result of imprudent investments.

## COUNT II

### (Failure to Diversify Plan Assets)

68.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

69.     Defendants breached their fiduciary duty to diversify Plan assets in order to prudently reduce the risk of large losses inherent in placing a large percentage of any investment portfolio, or allowing such a percentage to accumulate over time, in the shares of stock of any one publicly traded corporation.

70.     By allowing Syncor's Employees' Savings and Stock Ownership Plan to be continued on almost exactly the same terms as existed pre-merger, either through neglect or reckless disregard, the Cardinal Health defendants have breached their fiduciary duties to diversify Plan assets for their new Syncor employees.

71.     As a result of defendants allowing an imprudently high percentage of the Plan's assets to be held in the form of common stock, plaintiff and members of the Class, as well as the Plan as a whole, suffered losses, the amount of which will be determined at trial.

/ / /

/ / /

## COUNT III

### (Failure to Monitor Investment Alternatives)

72.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

73.    A fiduciary's duties of loyalty and prudence also entail a duty to continually monitor and, if necessary and prudent, conduct independent investigations into the relative merits of all the investment alternatives available in a plan, including employer securities, to ensure that each investment is a suitable and prudent option for the plan.

74.    Defendants breached this duty of monitoring and investigation with respect to the Company stock investment alternative. By no later than the beginning of the Class Period, defendants could and should have made a determination that Syncor/Cardinal Health stock was not a suitable and prudent investment alternative for the Plan, either for a participant's discretionary account or for the Company's matching investments.  By the beginning of the Class Period, if not before, Syncor/Cardinal Health stock was plainly an unsuitable and imprudent investment option for the Plan and its participants and beneficiaries.

75.    Cardinal Health, Syncor, Fu, Funari, Walter, Williams, Burgos and the other as yet unnamed individual defendants further breached their fiduciary duties by not monitoring or putting in place procedures to monitor the actions of the employees designated by Syncor/Cardinal Health to administer the Plan, and other Plan fiduciaries.

## COUNT IV

### (Failure to Avoid Conflicts of Interest)

76.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

77.    The fiduciary duty of loyalty entails a duty to avoid conflicts of

interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an unwavering eye toward the interests of the plan's participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

78.    Defendants breached their fiduciary duty to avoid conflicts of interest (and to promptly resolve them) by: continuing to allow investment in Syncor/Cardinal Health stock as an investment alternative within the Plan during the Class Period; failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment(s) in Company stock and the quality and quantity of the information provided to Plan participants and beneficiaries concerning such investment; and, generally, by failing to take the necessary steps to ensure that the Plan's fiduciaries did not suffer from conflicts of interest, which clearly made the Company Stock  an unsuitable investment alternative for the Plan.

## COUNT V

### (Breaches of Co-Fiduciary Duties)

79.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

80.    Each defendant, in addition to their individual breaches of fiduciary duty, knowingly participated in the above-described fiduciary breaches of its co-fiduciaries, enabled their co-fiduciaries to commit such fiduciary breaches by their own failure to comply with the provisions of ERISA § 404(a), 29 U.S.C. § 1104(a), and had knowledge of the breaches of their co-fiduciaries and failed to make reasonable efforts to remedy such breaches.

/ / /

/ / /

/ / /

# CAUSATION

81.　　The Plan suffered at least tens of millions of dollars in losses because substantial assets of the Plan were imprudently invested, or allowed to be invested by defendants, in Syncor/Cardinal Health stock during the Class Period, in breach of defendants' fiduciary duties.  This loss was reflected in the diminished account balances of the Plan's participants.

82.　　Defendants are responsible for losses caused by participant direction of investment in Syncor/Cardinal Health stock because defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder.  Defendants concealed material, non-public facts from participants, and provided misleading, inaccurate, and incomplete information to them regarding the true health and ongoing profitability of the Company, and therefore its soundness as an investment vehicle.  As a consequence, participants did not exercise independent control over their investments in Company stock, and defendants remain liable under ERISA for losses caused by such investment.

83.　　Defendants are also responsible for all losses caused by the investment of the Plan's Company matching contributions in Syncor/Cardinal Health stock during the Class Period, as defendants controlled the investment, and the investment was imprudent.

84.　　Had the defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in Company stock, eliminating Company stock as an investment alternative when it became imprudent, and divesting the Plan from Company stock when maintaining such an investment became imprudent, the Plan would have avoided a substantial portion of the losses that it suffered through its continued investment in Company stock.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

85.   ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

86.   With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in the plan would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available.  In this way, the remedy restores the values of the plan's assets to what they would have been if the plan had been properly administered.

87.   Plaintiff and the Class are therefore entitled to relief from the defendants in the form of: (1) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (3) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (4) taxable costs and (5) interests on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

/ / /

/ / /

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.   That the Court certify this action as a class action under Rule 23(b)(1), 23(b)(2) and 23(b)(3) with respect to the Class to the extent necessary to effect the purposes of this suit;

B.   That the Court enter Judgment providing the following relief to Plaintiff, and the Class:

    (i)   Joint and several liability against defendants, requiring them to make the Plan whole for the losses incurred as a result of their violations of ERISA, pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1109(a);

    (ii)   Injunctive relief enjoining defendants from continuing to violate their fiduciary duties under ERISA and the Plan documents, pursuant to ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3);

    (iii)   Other injunctive and equitable relief as appropriate to remedy the breaches alleged above, pursuant to ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3);

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

1    (iv)   Reasonable attorneys' fees and costs incurred by Plaintiff and
2           the Class, pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);
3    (v)    Interest on all Judgment amounts as provided by law; and
4    (vi)   Such other legal or equitable relief as may be just and proper.

6  Dated: April 7, 2003                    **LIM RUGER & KIM, LLP**

8                               By:        _____
9                                          Christopher Kim
                                           Lisa J. Yang
10                                         1055 Seventh Street, Suite 2800
                                           Los Angeles, California 90017
11                                         Telephone: (213) 955-9500

12                                         **SCHIFFRIN & BARROWAY, LLP**
                                           Richard S. Schiffrin
13                                         Joseph H. Meltzer
                                           Edward W. Ciolko
14                                         Three Bala Plaza East, Suite 400
                                           Bala Cynwyd, Pennsylvania 19004
15                                         Telephone: (610) 667-7706